# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TRAFFIC JAM EVENTS, LLC,**

    **Plaintiff,**

-vs-              Case No. 6:09-cv-146-Orl-19GJK

**ANGEL CORTES, CORTES ENTERPRISES, LLC, OVERDRIVE DIRECT MARKETING, INC.,**

    **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1. Dispositive Motion of Defendants to Dismiss for Failure to State a Claim and Lack of Jurisdiction and Memorandum of Law (Doc. No. 21, filed June 1, 2009); and

2. Memorandum of Plaintiff in Opposition to Motion to Dismiss (Doc. No. 22, filed June 15, 2009).

## Background

Plaintiff Traffic Jam Events, LLC ("Traffic Jam") brought this action against Angel Cortes, Cortes Enterprises, LLC, and Overdrive Direct Marketing, Inc. (collectively "Defendants"), alleging eight causes of action: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125 (2006); (2) breach of contract; (3) misappropriation of trade secrets; (4) conversion; (5) breach of duty of loyalty; (6) trade slander and defamation; (7) intentional interference with business relations; and (8) a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-213 (2008). (Doc. No. 20 ¶¶ 39-80, filed May 11, 2009.) Traffic Jam's allegations center

around the breakdown of its former business relationship with Angel Cortes and his company, Cortes Enterprises, LLC. (*Id.* ¶ 8.) According to the Amended Complaint, Traffic Jam produces direct mail advertising for automobile dealerships around the country. (*Id.* ¶¶ 6-8.) Cortes worked as an agent for Traffic Jam beginning in March of 2008. (*Id.* ¶ 8.) In this role, Cortes was provided with confidential information, including Traffic Jam's customer list. (*Id.* ¶¶ 9-14.) Eventually, Cortes ceased working for Traffic Jam and began to use its confidential information to solicit business for his newly formed company, Overdrive Direct Marketing, Inc. (*Id.* ¶¶ 15-31.) Some of Cortes' preparation occurred while he was still an agent of Traffic Jam. (*Id.* ¶¶ 20, 23.) Traffic Jam also alleges that it loaned Cortes $20,000 to allow him to avoid foreclosure on his personal home. (*Id.* ¶¶ 32-34.) Cortes has not repaid the money. (*Id.* ¶ 34.)

Defendants originally moved to dismiss this action on February 10, 2009, and the Court denied that Motion as moot because it found that Traffic Jam's Complaint constituted a shotgun pleading. (Doc. No. 19, filed Apr. 17, 2009.) As instructed, Traffic Jam filed an Amended Complaint on May 11, 2009. (Doc. No. 20.) Defendants again move to dismiss.

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ___, 127 S. Ct. 2499, 2509 (2007) (citation omitted); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 127

S. Ct. at 2509 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

Defendants make three arguments for dismissal, each of which contain additional sub-arguments. The Court will address these arguments in the order in which Defendants present them.

## I.     Personal Liability for Cortes

Defendants first argue that the Amended Complaint does not establish personal liability for Cortes.  Defendants present two specific reasons: (1) Traffic Jam fails to allege any "terms" of an "independent contractor, agency, joint venture, partnership[,] or any other business relationship" in the Amended Complaint and therefore does not "state a claim";[1] and (2) Cortes, as a corporate officer, is not liable for his corporation's wrongdoing.[2]  (Doc. No. 21 at 3-5.)

Regarding Defendants' first argument, paragraph 8 of the Amended Complaint explains that "Defendants Cortes and Cortes Enterprises began working as agents for Traffic Jam beginning in March of 2008 and sold Traffic Jam's services to automobile dealerships on a national basis." (Doc. No. 20 ¶ 8.)  Several other paragraphs flesh out this legal conclusion with factual support.  (*Id.* ¶¶ 9-14 (explaining that Cortes actively solicited business for Traffic Jam and was provided with confidential information to do so).)  Thus, Traffic Jam has pled the existence of an agency relationship.  To the extent Defendants argue that Traffic Jam fails to allege specific terms of the agency agreement, the point is irrelevant.  None of Traffic Jam's claims rest on the specific terms of the agency relationship, and therefore such terms are not necessary components of Traffic Jam's claims against Cortes.

---

[1]     Defendants appear to raise this point because Traffic Jam would need to establish that an agency relationship existed in order to maintain certain causes of action against Cortes, for instance the breach of duty of loyalty claim.  (Doc. No. 20 ¶¶ 60-63.)  Of course, even if Cortes was not an agent of Traffic Jam, he can be liable for independent torts such as defamation or intentional interference with business relations.  (*Id.* ¶¶ 64-72.)

[2]     Concerning the personal loan to Cortes, Defendants argue that the Amended Complaint fails to state a claim for repayment of a loan because it lacks "allegations of maturity date, interest, acceleration or default." (Doc. No. 21 at 4-5.)  The Court previously rejected this argument in its earlier Order, (Doc. No. 19 at 3), and does so here for the same reasons.

Defendants' second argument is more convincing. Defendants are correct in stating that Cortes, as a corporate officer, cannot be personally liable on that basis alone, and the Amended Complaint contains insufficient factual allegations to make Cortes personally liable through the piercing of the corporate veil. Under Florida law, a plaintiff seeking to pierce the veil must demonstrate that: (1) the corporation is a mere instrumentality or alter ego of the defendant; and (2) the defendant engaged in "improper conduct." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1120-21 (Fla. 1984). Paragraphs 42, 53, 59, 71, and 79 contain identical language stating:

> Defendant Cortes used Overdrive and Cortes Enterprises in such a manner that he dominated and controlled the corporation to such an extent that the corporations' independent existences, were in fact nonexistent and the shareholders were in fact alter egos of the corporation. Defendant Cortes further used the corporate form for an improper purpose causing injury to Traffic Jam.

(Doc. No. 20, ¶¶ 42, 53, 59, 71, 79 (punctuation as in original).)[3] Paragraphs 19 and 20 state that Cortes began operating Overdrive as a competitor while still an agent of Traffic Jam. (*Id.* ¶¶ 19-20.)

The Supreme Court's recent decision in *Ibqal* instructs courts to disregard "conclusory" statements or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. Rather, Traffic Jam must provide "well-pled facts" which "state a claim to relief that is plausible on its face." Paragraphs 42, 53, 59, 63, 66, 71, and 79 are simply "threadbare" recitations of the standard for piercing the corporate veil and must be disregarded. Paragraphs 19 and 20 contain facts demonstrating that Cortes used his corporations for "improper conduct," but the paragraphs do not contain allegations establishing that Cortes used the corporations as his alter egos. Thus, the Amended Complaint does not allege the facts necessary to pierce the corporate veil.

---

[3] Paragraph 63 is identical except that it states that Cortes used Cortes Enterprises alone as his alter ego, and Paragraph 66 is identical except that it states that Cortes used Overdrive alone as his alter ego.

Accordingly, the Complaint states individual claims against Cortes to the extent the individual claims against him rest on either his status as an agent of Traffic Jam or his individual actions, but it fails to state individual claims against Cortes based on the piercing of the corporate veil. (*See* Doc. No. 20, ¶¶ 42, 53, 59, 63, 66, 71, 79.)

## II. Confusion of a Trademark and Misappropriation of the Customer List

Defendants next argue that Traffic Jam's trademark infringement claim fails because Traffic Jam has not demonstrated confusion of a trademark within the meaning of 15 U.S.C. § 1125(a)(1)(A). The Trademark Act of 1946, more commonly known as the Lanham Act, provides the statutory framework for protection of trademarks. 15 U.S.C. §§ 1051-1141n (2006). "Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition in interstate commerce, and forbids unfair trade practices involving infringement of . . . trademarks, even in the absence of federal trademark registration." *Custom Mfg. & Eng'g v. Midway Servs.*, 508 F.3d 641, 647 (11th Cir. 2007) (quoting *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 775-76 (11th Cir. 1996)) (internal quotation marks omitted; alteration by *Custom Mfg. & Eng'g* court); *accord* 15 U.S.C. 1125(a). The "touchstone" of pursuing an action under section 43(a) is to demonstrate "consumer confusion." *Custom Mfg. & Eng'g*, 508 F.3d at 647.

Specifically, Defendants argue that no confusion could have resulted from their actions because every email message they sent to customers contained the names of both Traffic Jam and Overdrive; for example, "Cortes Enterprises aka Traffic Jam Orlando IS NOW Overdrive." (Doc. No. 21 at 5.) As Traffic Jam points out, this argument misses the point. The email contains both names because it states that Traffic Jam had become a new entity called "Overdrive." Thus, the use of Defendants' names in the email actually furthers the potential for consumer confusion. In

addition, Traffic Jam has attached as an exhibit to the Amended Complaint an email in which Defendants take credit for what Traffic Jam contends are its own achievements. (Doc. No. 20-4 at 2-3.) In sum, Defendants' use of their own names in these emails does not negate the likelihood of trademark confusion. *Custom Mfg. & Eng'g*, 508 F.3d at 649; *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335-41 (11th Cir. 1999).[4]

Defendants also argue that Traffic Jam's misappropriation claim relating to the customer list fails because Traffic Jam has not alleged a business relationship or restrictive covenant prohibiting use of the list. However, as explained above, Traffic Jam did allege the existence of an agency relationship. Further, Defendants offer absolutely no authority for the proposition that an express restrictive covenant is a prerequisite to bringing a misappropriation claim under Florida law, and the case law and relevant statutory language suggest the opposite. *See Hartfield v. AutoNation, Inc.*, 939 So. 2d 155, 157 (Fla. 4th DCA 2006) ("[Section 688.003 of the Florida Statutes] deals not with restrictive covenants and employment by a business' competition, but with misappropriation. It provides injunctive relief when trade secrets have actually been misappropriated, as here, or misappropriation has been threatened."); Fla. Stat. § 688.002 (2008) (omitting the requirement of a restrictive covenant to establish "misappropriation"); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1550 (11th Cir. 1996) ("[Plaintiffs] are correct in asserting that Florida law recognizes implied confidential relationships sufficient to trigger trade secret liability."). Accordingly, Traffic Jam has sufficiently alleged misappropriation under Florida law.

---

[4] Defendants cite no case law and make no reference to the seven factor test used to evaluate the likelihood of consumer confusion, *see Frehling Enters., Inc.*, 192 F.3d at 1335-41, instead arguing only that the use of both names in the emails negates confusion as a matter of law, (Doc. No. 21 at 5). For purposes of this Order, the Court assumes, without deciding, that this seven factor test is otherwise satisfied.

**III. Jurisdiction**

Defendants lastly argue that "the amount in controversy [cannot] to a legal certainty meet the sum specified by 28 U.S.C. § 1332." Traffic Jam's trademark infringement claim is brought under 15 U.S.C. § 1125 and therefore arises under federal law within the meaning of 28 U.S.C. § 1331. Traffic Jam argues that diversity jurisdiction is unnecessary because "[t]his immediately resolves the issue," (Doc. No. 22 at 6), but the analysis is not so simple.

Federal question jurisdiction over the trademark infringement claim does not automatically confer jurisdiction over the seven state law claims. Rather, these claims must be supported by either supplemental jurisdiction or an independent basis for subject matter jurisdiction such as diversity jurisdiction. Supplemental jurisdiction exists with respect to any state law claim that arises under the same common nucleus of operative fact of the claim over which the Court has original jurisdiction. *E.g.*, *Hough v. O'Neal*, 222 F. App'x 913, 914 (11th Cir. 2007). Traffic Jam's misappropriation, conversion, breach of duty of loyalty, trade slander and defamation, intentional interference with business relations, and FDUPTA claims all arise from Defendants' operation of Overdrive as a competitor of Traffic Jam. This, of course, is also the basis of Traffic Jam's federal Lanham Act claim. As a result, these six state law claims fall squarely within the same nucleus of operative fact as the federal claim. *See id.*

On the other hand, Traffic Jam's breach of contract claim arises out of a personal loan to Cortes. There is no discernable link between the loan and Traffic Jam's federal claim other than the fact that Traffic Jam made the loan to Cortes while he was still an agent of Traffic Jam. This commonality, alone, is not enough to confer supplemental jurisdiction on the state law claim.

*Compare Dowell v. Kidz R 4 Uz, Inc.*, No. 6:08-cv-651-Orl-22KRS, 2008 WL 4613049, at *1 (M.D. Fla. Oct. 14, 2008) (finding that an employer's counterclaim for repayment of a loan was not sufficiently related to the plaintiff's Fair Labor Standards Act claim against her employer), *and Yetnikoff v. Mascardo*, No. 06 Civ.13494 GEL, 2007 WL 690135, at *2 (S.D.N.Y. Mar. 6, 2007) (finding that a claim against a landlord for breach of lease was not sufficiently related to the lessee's claim under the Fair Debt Collection Act against the landlord and her law firm; noting that both claims' relation to the existence of the landlord-lessee relationship was no more of a similarity than the fact that all of the claims arose from the plaintiff's decision to move to Manhattan), *with Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (finding that a counterclaim for repayment of a loan was part of the same common nucleus of operative fact as claims under the Equal Credit Opportunity Act relating to those specific loans), *and Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997) (finding that a university's counterclaim for payment of tuition was sufficiently related to the student's discrimination suit against the university because the student stopped paying tuition on the belief that the university's discrimination relieved him of the debt). Accordingly, the claim for repayment of the loan may remain only if diversity jurisdiction under 28 U.S.C. § 1332 exists.

Because the loan was for $20,000, Traffic Jam's breach of contract claim does not, by itself, meet the $75,000 jurisdictional minimum of 28 U.S.C. § 1332. *See, e.g.*, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994) (diversity jurisdiction does not exist where it appears "to a legal certainty that plaintiff's claim is actually for less than the jurisdictional amount" (citation and internal quotation marks omitted)). However, a single plaintiff is permitted to aggregate all of his or her claims against a single defendant, regardless of relation to one another, when calculating the

jurisdictional minimum. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 585 (2005) ("This Court has long held that, in determining whether the amount-in-controversy requirement has been satisfied, a single plaintiff may aggregate two or more claims against a single defendant, even if the claims are unrelated." (citation omitted)); *see also* 28 U.S.C. § 1332 (requiring the "matter in controversy," as opposed to a single claim, to exceed $75,000). The sworn verification attached to the Amended Complaint states that Traffic Jam typically generates between $45,000 and $50,000 per sales event and has lost at least two events as a direct result of Defendants' conduct. (Doc. No. 20-6 at 1-2.) Thus, Traffic Jam has produced evidence demonstrating that it suffered at least $90,000 in damages related to the misappropriation, conversion, breach of duty of loyalty, trade slander and defamation, intentional interference with business relations, and FDUPTA claims, and it pled in the Amended Complaint that it suffered an additional $20,000 in damages relating to Cortes' failure to repay the loan. Accordingly, the $75,000 jurisdictional minimum is easily satisfied, and diversity jurisdiction exists with respect to the seven state law claims. 28 U.S.C. § 1332. As a result, this Court possesses subject matter jurisdiction over the entire case.

## Conclusion

Based on the foregoing, the Dispositive Motion of Defendant to Dismiss for Failure to State a Claim and Lack of Jurisdiction and Memorandum of Law (Doc. No. 21, filed June 1, 2009) is **GRANTED in part and DENIED in part**. The Motion is granted to the extent it seeks a ruling that the Amended Complaint does not contain sufficient allegations to hold Angel Cortes liable in his individual capacity as a result of piercing the corporate veils of Overdrive Direct Marketing, Inc.

and Cortes Enterprises, Inc.[5] The Motion is denied in all other respects. Plaintiff is given leave to file within eleven days from the date of this Order a Second Amended Complaint that contains sufficient allegations to pierce the corporate veils of these corporations as a basis for Cortes' individual liability. If Plaintiff elects not to file a Second Amended Complaint, the action will proceed on the Amended Complaint currently before the court, except as stated in this Order.

Ordered this 19th day of July, 2009 in Orlando, Florida.

*[signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

---

[5] Defendants do not argue that any particular claim against Cortes is based solely on a veil piercing theory and should thus be dismissed as to Cortes in his individual capacity. Notably, the veil piercing allegations appear in every count except the breach of contract claim. (Doc. No. 20 ¶¶ 42, 53, 59, 63, 66, 71, 79.) However, the paragraphs contained within these counts also allege direct wrongdoing by Cortes. (*E.g.*, *id.* ¶¶ 64-67 (alleging that "Angel Cortes" made false and defamatory statements.) Accordingly, these counts remain pending against Cortes, except that in their current form they fail to state a claim against Cortes based on a veil piercing theory. If Plaintiff elects not to amend the Amended Complaint, Plaintiff will not be able to rely on a veil piercing theory as a basis to hold Cortes individually liable.